UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KAITLYN BAUMGARTNER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No.: 3:18-CV-177-PLR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

Petitioner Kaitlyn Baumgartner has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent has filed a response in opposition to the motion, to which Baumgartner has responded. Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing[1], and Baumgartner's § 2255 motion will be denied.

**I.     BACKGROUND FACTS AND PROCEDURAL HISTORY**

In February 2016, Baumgartner served as the getaway driver for co-defendant Randy Mestre's armed robbery of four business establishments [Doc. 33 ¶ 4 in No. 3:16-CR-77]. Baumgartner knew in advance that Mestre "planned to rob the respective businesses [and] . . . planned to use a firearm to commit the robberies" [*Id*.]. In November 2016, Baumgartner pleaded guilty to four counts of aiding and abetting Hobbs Act robbery in violation of 18 U.S.C. § 1951,

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain her claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

and one count of aiding and abetting the use and brandishing of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) [Doc. 35 in No. 3:16-CR-77].  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties negotiated a total sentence of 15 years' imprisonment, consisting of concurrent terms of 8 years' imprisonment for the robberies followed by the statutorily mandated consecutive 7-year term for the firearm offense [Doc. 33 ¶ 6 in No. 3:16-CR-77].

Baumgartner's advisory Guidelines range was calculated to be 162 to 181 months' imprisonment, based on a total offense level of 26 and a criminal history category of III [Doc. 53 ¶ 96 in No. 3:16-CR-77].  The Court sentenced Baumgartner to the 180-month sentence of imprisonment agreed to by the parties [Doc. 56 in No. 3:16-CR-77].  Consistent with the appeal-waiver provision in the plea agreement, Baumgartner did not appeal [*See* Doc. 33 ¶ 10(a) in No. 3:16-CR-77].

Thereafter, Baumgartner filed the instant § 2255 motion, alleging four instances of ineffective assistance by her counsel [Doc. 1].  The United States was ordered to respond, and it complied with the order and filed its response in opposition to the motion on July 11, 2018 [Doc. 6]. Baumgartner submitted a reply on July 30, 2018 [Doc. 7].

## II. LEGAL STANDARD

After a defendant has been convicted and exhausted her appeal rights, a court may presume that "[s]he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire

proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

## III. DISCUSSION

In *Strickland v. Washington*, the Supreme Court set forth a two-pronged test for determining whether a convicted defendant has received the ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* holds that a petitioner alleging the ineffective assistance of counsel must establish (1) that counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) that she was prejudiced by the deficiency, i.e., that there exists a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *See Strickland*, 466 U.S. at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697.

### A. Robbery of the Pilot Travel Center

Baumgartner first argues that the robbery of the Pilot Travel Center, which exists "solely within the State of Tennessee," did not "affect[] interstate commerce" and was thus not a federal crime, and that counsel was constitutionally ineffective for failing to conduct sufficient investigation to discover that alleged fact [Doc. 1 p. 5]. However, the Hobbs Act proscribes robbery that affects interstate commerce "in any way or degree." 18 U.S.C. § 1951(a). The Sixth Circuit has held that there is "no requirement that there be an actual effect on interstate commerce." *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990). Rather, the Hobbs Act is "read broadly to allow purely intrastate activity to be regulated under the theory that there was a *realistic*

3

*probability* that the activity would have affected interstate commerce." *Id*. at 1175 (emphasis in original). For example, the interstate-commerce nexus is satisfied where a business purchases items that have moved through interstate commerce. *See, e.g., United States v. Brown*, 959 F.2d 63, 68 (6th Cir. 1992). The Pilot Travel Center undoubtedly purchased items that had been manufactured outside of Tennessee. Therefore, the requisite interstate-commerce link existed, and counsel was not ineffective for failing to argue otherwise.

### B. Coercion or duress

Baumgartner next argues that counsel should have presented a defense that she was coerced and acted in duress [Doc. 1 p. 6]. Coercion is an affirmative defense that excuses a crime if the defendant proves that she (1) "reasonably believed there was a present, imminent, and impeding threat of death or serious bodily injury" to herself or another, (2) "had not recklessly or negligently placed [her]self in a situation in which it was probable that [s]he would be forced to choose the criminal conduct," (3) had "no reasonable, legal alternative to violating the law," (4) "reasonably believed [her] criminal conduct would avoid the threatened harm," and (5) "did not maintain the illegal conduct any longer than absolutely necessary." 6th Cir. Crim. Pattern Jury Instruction 6.05; s*ee also Dixon v. United States*, 548 U.S. 1, 8-9 (2006).

Baumgartner states that her co-defendant was also her boyfriend, pimp, and drug supplier, who had choked her and placed a gun to her head several times, and who had "threatened to harm her family if she were to refuse to engage in criminal misconduct" [Doc. 7 p. 6]. However, a generalized fear of a manipulative, abusive boyfriend is not sufficient to excuse a two-day spree of criminal conduct in the absence of an imminent threat that Baumgartner was unavailable to avoid. The facts of this case fail to demonstrate a viable coercion defense, and counsel's failure to assert such a defense is not ineffective assistance of counsel. Moreover, before sentencing, Baumgartner's counsel argued that Baumgartner's relationship with the co-defendant "was of a

nature that she did not feel she could refuse his instructions to drive him to and from these offenses" [Doc. 52 p. 2, 4]. Therefore, counsel did alert the Court to the nature of Baumgartner's relationship with her co-defendant prior to sentencing, and counsel did not render ineffective assistance with regard to this claim.

C.      18 U.S.C. § 924(c) conviction

Baumgartner also faults counsel for not disputing the constitutionality of § 924(c)'s "residual clause" in light of the holdings in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which invalidated the Armed Career Criminal Act and the Immigration and Nationality Act's definitions of a "crime of violence" under their respective residual clauses. *Johnson*, 135 S. Ct. at 2563; *Dimaya*, 138 S. Ct. at 1211, 1223.

The residual clause struck down as unconstitutionally vague in *Johnson* defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); *Johnson*, 135 S. Ct. at 2563. The clause struck down in *Dimaya*, based on *Johnson*'s reasoning, defined a "crime of violence" as a felony offense that "by its nature[] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b); *Dimaya*, 138 S. Ct. at 1212. According to Baumgartner, this reasoning also invalidates the residual clause in § 924(c)(3)(B)'s definition of a crime of violence, which requires vacatur of her § 924(c) conviction.

Under 18 U.S.C. § 924(c), it is unlawful to use or carry a firearm during and in relation to a "crime of violence or drug trafficking crime," or to possess a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). A "crime of violence" under § 924(c) is "an offense that is a felony and" either (1) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "use-of-force clause"); or (2) "by its nature, involves

5

a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3).

The Sixth Circuit has expressly held that *Johnson*'s reasoning does not invalidate residual clause of § 924(c)(3)(B). *United States v. Taylor*, 814 F.3d 340, 376-79 (6th Cir. 2016). Moreover, because the Supreme Court expressly stated in *Johnson* that it was not invalidating the ACCA's use-of-force clause, *Johnson* has no application to the similarly worded use-of-force clause in § 924(c)(3)(A). *Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). Therefore, even if *Johnson* and *Dimaya* did invalidate the residual clause of § 924(c)(3)(B), Baumgartner's conviction would nonetheless be valid under § 924(c)(3)(A)'s use-of-force clause. A Hobbs Act robbery by definition involves the taking of property "by means of actual or threated force, or violence, or fear of injury," and therefore, categorically involves the use, attempted use, or threatened use of such force. 18 U.S.C. § 1951(b)(1); *see also, e.g., United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017) (holding Hobbs Act robbery is a crime of violence under § 924(c)'s use-of-force clause). Accordingly, the reasoning of *Johnson* and its progeny do not provide Baumgartner with a basis to challenge the validity of her convictions. Therefore, counsel had no legitimate basis to raise such an argument on Baumgartner's behalf, and she was not prejudiced by counsel's choice not to do so. *See, e.g., Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel").

### D. Mitigating circumstances

Baumgartner further states the counsel rendered ineffective assistance in failing to present mitigating circumstances of her "mental illness" that she has suffered "since early childhood" [Doc. 1 p. 9]. However, the record shows that Baumgartner's counsel informed the Court of such

6

facts in a sentencing memorandum, along with a letter from Baumgartner's adoptive parents [Doc. 52 p. 2-3 and Ex. 1 in No. 3:16-CR-77]. Additionally, the presentence investigation report ("PSR") provided additional information about Baumgartner's childhood and mental-health issues [Doc. 53 ¶¶ 83, 88]. Accordingly, counsel did not fail to raise these issues, and counsel did not render deficient assistance. Moreover, even if counsel had failed to present Baumgartner's history, Baumgartner cannot establish prejudice, because her sentence was the product of a Rule 11(c)(1)(C) agreement.

### E. Aiding and abetting

In her reply to the Government's response to her § 2255 motion, Baumgartner also argues that her aiding and abetting convictions are unlawful, because "despite [her] knowledge . . . that [her co-defendant] had a firearm, that he had planned to rob those locations[s], and that he had planned to do so at gun point, she took no part in the scheme or plan to actually rob any one of those locations" [Doc. 7 p. 1-5]. However, arguments raised for the first time in a party's reply brief are waived. *See, e.g., United States v. Lopez-Medina*, 461 F.3d 724, 743 n. 4 (6th Cir. 2006). Therefore, this issue, raised for the first time in Baumgartner's reply, is waived.[2]

## IV. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Baumgartner must obtain a COA before she may appeal the denial of her § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will

---

[2] The Court otherwise find Baumgartner's argument baseless, as driving the getaway vehicle for an individual she knew to be engaged in criminal activity clearly meets the standard for aiding and abetting an offense under 18 U.S.C. § 2 ("Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

7

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

V. **CONCLUSION**

For the reasons stated herein, Baumgartner has failed to establish any basis upon which § 2255 relief could be granted, and her motion will be **DENIED**. A COA from the denial of her § 2255 motion will be **DENIED**.

**An appropriate Order will enter.**

*[signature]*
**CHIEF UNITED STATES DISTRICT JUDGE**